```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TAMEER PEAK,                                                :
                                                            :
                              Plaintiff,                    :
                                                            :         25-CV-7552 (VSB)
               -against-                                    :
                                                            :              ORDER
                                                            :
ONIKA TANYA MARAJ-PETTY, et al.,                            :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X
```

<u>VERNON S. BRODERICK</u>, United States District Judge:

      I am in receipt of Plaintiff's November 12, 2025 letter regarding his "notice of escalating harassment," (Doc. 28), and his November 12, 2025 second opposition letter to Defendants Onika Tanya Maraj-Petty ("Maraj-Petty") and Pink Personality, Inc.'s ("Pink Personality") request to stay proceedings and vacate the certificate of default, (Doc. 29). These letters were only formally filed on the docket on November 18, 2025—five days after I issued my November 13, 2025 Opinion & Order granting Defendants' request to stay the case and vacate the certificate of default, (Doc. 27 ("Opinion"))—because Plaintiff manually delivered his letters to this Court's Pro Se office, (Doc. 30). Plaintiff argues in his November 20, 2025 letter, which clarifies the docketing delays, that his two letter submissions provide additional detail in regard to the "threats" he received from Defendants' former counsel and the prejudice he faces because of these delays. (Doc. 30 at 1). Although Plaintiff notes that he is not asking me to revisit the prior ruling, *id.*, I have reviewed Plaintiff's additional submissions and find that these letters do not change the outcome or conclusions discussed in my November 13, 2025 Opinion.

1

First, Plaintiff argues that Maraj-Petty and Pink Personality, Inc's delays have been willful because they are a "deliberate choice" and a "strategic decision to delay responding," particularly since Defendants' former counsel Judd Burstein ("Burstein") contacted Plaintiff directly about the lawsuit before the answer deadline. (Doc. 29 at 1–2.) However, Plaintiff simply repeats the same arguments about Defendants' former counsel that he included in his November 3, 2025 opposition letter to the stay request. (*Compare* Doc. 20 at 1–2 (Burstein "personally emailed Plaintiff urging Plaintiff to withdraw the complaint and made threats in connection with the litigation. . . . This demonstrates that Defendants had ample notice and opportunity to respond but willfully chose not to."), *with* Doc. 29 at 1 ("[O]n October 20, 2025, attorney Judd Burstein, who has represented Defendant Minaj in multiple matters, contacted me directly regarding this lawsuit. This communication confirms that Defendants had actual notice of the lawsuit well within the Rule 12(a) response period to answer.").)

Plaintiff claims that the Second Circuit has held that "[a] default is willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained," citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991). (Doc. 29 at 1.) However, I could not find this quote in *Action S.A.*; it simply does not exist. Moreover, the circumstances here are markedly different from *Action S.A.*. Defendants Maraj-Petty and Pink Personality did not "admit[] [they] deliberately chose not to appear in the action" and I was not asked to vacate a judgement of default "eight years after [Plaintiff] commenced this action," *Action S.A.*, 951 F.2d at 507—my Opinion vacated a certificate of default that was issued three days after the answer deadline passed and merely nine days before Defendants filed their request for a 45 day stay, clearly explaining their counsel's abrupt departure. (Doc. 27.) "Plaintiff's claim that [Defendants] [were] engaged in a calculated effort to default strategically . . . is soundly

contradicted by the vigorous efforts that [Defendant] made . . . (a mere [34] days after [they were] served with process) to shoulder [their] litigation responsibilities by filing . . . a motion to vacate the default." *Hubbuch v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 25-CV-5547, 2025 WL 2592155, at *4 (S.D.N.Y. Sept. 8, 2025) (internal quotation marks omitted).

Second, Plaintiff contends that Burstein "is now making public statements to the press while Defendants simultaneously seek a stay on the basis that they lack counsel," undermining their claim that they were unable to respond to the complaint. (Doc. 28 at 1–2.) Plaintiff also states that Defendants "have long-standing access to counsel" and their "need for more time is not the result of sudden or unavoidable circumstances but rather follows a strategic decision to delay responding." (Doc. 29 at 2.) However, as Defendants clearly explained in their original stay request, Burstein "abruptly withdrew entirely from his representation of Defendants, without giving any prior notice" only a few days after his alleged communications with Plaintiff, so Defendants need time to retain new litigation counsel. (Doc. 17.) Additionally, Burstein's conduct after he has withdrawn from the case does not reflect Defendants' abilities to promptly respond to the complaint. Plaintiff also cites *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) for the proposition that "waiting to retain counsel does not constitute good cause." (Doc. 29 at 2.) This case does not contain such a quote, nor does it deal with the question of retaining new counsel. In fact, this case does not even deal with the question of vacating a certificate of default but rather vacating a default after the entry of final judgement, which is governed by Rule 60(b). *See Ravazzani v. Park*, No. 24-CV-3139 (JPO), 2025 WL 2939250, at *2 (S.D.N.Y. Oct. 16, 2025). In *McNulty*, the Second Circuit affirmed the district court's finding that Defendant's counsel, and thus the Defendant, acted willfully in defaulting because he failed to respond to the complaint for approximately eight months, despite clear notice of the lawsuit and multiple letters

3

from Plaintiff. *See McNulty*, 137 F.3d at 734–35, 738–40. Here, Defendants Maraj-Petty and Pink Personality requested a stay in the case a mere two weeks after their deadline to answer the complaint passed and a certificate of default was issued. (Doc. 17.) As I noted in my prior Opinion, Defendants' "quick actions upon [their] receipt of the notice of default judgment is a key indicator that [their] default was not willful." *OEC Freight (NY) Inc. v. Stanley Furniture Co.*, No. 20-CV-9556, 2023 WL 3080775, at *3 (S.D.N.Y. Apr. 25, 2023).

Finally, Plaintiff argues that he faces prejudice from these delays because of the "continued impact on [his] reputation and strategic disadvantages" due to Defendants' response extensions. (Doc. 29 at 2). However, as Plaintiff makes clear in his "Notice of Escalating Harassment," he has "experienced a sharp increase in targeted harassment" because of "recent public reporting of this lawsuit on November 12, 2025," (Doc. 28)—not due to Defendants' short delay in responding to his lawsuit. Indeed, while litigation inevitably can harm the reputations of parties, this is not itself sufficient to issue a certificate of default, particularly since Defendants have shown a prompt interest in litigating the case. Furthermore, Plaintiff again misquotes the case he cites in his letter, *Shady Recs., Inc. v. Source Enters., Inc.*, 371 F. Supp. 2d 394, 400 (S.D.N.Y. 2005), for the proposition that reputational harm is a form of prejudice. The *Shady Records* court said nothing about reputational harm and discussed a voluntary dismissal and temporary restraining order, not a default judgement. Therefore, even if I had Plaintiff's additional submissions prior to my November 13, 2025 Opinion, it would not have changed the outcome of that decision.

Additionally, because of his persistent misquotes and interpretation of cases, I am concerned that Plaintiff may be using generative artificial intelligence ("AI") during the course of this litigation. While I am sympathetic to Plaintiff's pro se status and will continue to

construe his submissions "liberally and to interpret them to raise the strongest arguments they suggest," *Bautista v. TAP Air Portugal*, No. 1:24-CV-00503, 2025 WL 1224799, at *2 (S.D.N.Y. Apr. 28, 2025) (citation modified), my Individual Rules and Practice in Civil Cases clearly state that all litigants, whether pro se or represented by counsel, "must disclose that AI has been used." Individual R. & Prac. in Civ. Cases 4(J). Additionally, "the party must further certify in the document that it has independently reviewed and verified the accuracy of any portion of the document drafted by generative AI" and "[f]ailure to comply with this rule may result in sanctions, the document being stricken, or other remedies that the Court deems appropriate." *Id.* This obligation requires litigants to carefully review every statement and citation drafted by AI to ensure that it is legally and factually correct, particularly given that AI tools make it much easier for pro se litigants to submit "voluminous" briefing. *See Thornock v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 25-CV-56, 2025 WL 1900314, at *4 n.5 (E.D. Va. July 9, 2025). Here, each of Plaintiff's case quotations in his second opposition letter, filed on November 12, 2025, cannot be found in the cited cases, suggesting that these quotations might be "hallucinated," a term used for citations produced by AI "that conform to the Bluebook, but ultimately are not real." *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 342 (E.D.N.Y. 2025).

For these reasons, the 45-day stay in this case will continue, as ordered in my previous Opinion, and Plaintiff is cautioned to conform to Rule 4(J) of my Individual Rules if using generative AI to conduct legal research during the course of this litigation.

SO ORDERED.

Dated:     November 26, 2025
           New York, New York

                                                Vernon S. Broderick
                                                United States District Judge